## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

MARK VALIMONT,

        Plaintiff,

v.

        **MEMORANDUM OF LAW & ORDER**
        Civil File No. 17-3655 (MJD/KMM)

STATE OF MINNESOTA, <u>et al.</u>,

        Defendants.

Roderick J. Macpherson, III, Minnesota Disability Law Center.

Janine Wetzel Kimble and Kathryn Iverson Landrum, Minnesota Attorney General's Office, Counsel for Defendants.

## I.    INTRODUCTION

This matter is before the Court on Defendants' Motion to Dismiss.  [Docket No. 12]  The Court heard oral argument on January 11, 2018.

## II.    BACKGROUND

### A.    Factual Background

Plaintiff Mark Valimont is currently a resident of Mankato, Minnesota. (Am. Compl. ¶ 9.)   Valimont is deaf.  (<u>Id.</u> ¶ 10.)  His primary language is American Sign Language ("ASL").  (<u>Id.</u> ¶ 11.)

On November 3, 2015, the Freeborn County District Court, in Minnesota's Third Judicial District, sent Valimont a summons and juror Qualification Questionnaire for grand jury service convening in January 2016.  (Am. Compl. ¶¶ 1, 18; Am. Compl., Ex. A, Qualification Questionnaire.)  Valimont asserts that he wanted to serve on a grand jury but he needed an ASL interpreter in order to be able to serve.  (Am. Compl. ¶¶ 10-11, 19, 21.)

On December 14, 2015, Valimont completed and returned the Qualification Questionnaire.  (Am. Compl. ¶ 20; Qualification Questionnaire.)  The Qualification Questionnaire did not ask whether Valimont needed an interpreter or other auxiliary aid.  (Qualification Questionnaire.)  In the section entitled "Qualification Questions," it did ask: "Do you have a physical or mental disability that would affect your ability to serve on a jury? If YES, you must attach a written explanation.  A medical statement may be required."  (Id.)  Valimont checked "Yes."  (Id.)  With the completed Qualification Questionnaire, Valimont included a letter that stated:

> Ma'm or Sir,
>
> I, Mark Valimont, am Deaf and troubled phyiscally [sic] body.  Two things I need to access is a certified legal American Sign Language interpreter and a comfortly [sic] soft chair with both soft arms to support.  I happened to be a survivor.

Highly appreciated,

Mark Valimont

(Am. Compl., Ex. B.)  Valimont asserts that he wanted to serve on a grand jury
and was not asking to be excused.  (Am. Compl. ¶¶ 19, 23.)

Once the court received the letter, Teresa VanBuskirk, then a Leadworker
in the Freeborn County District Court in charge of processing jury summonses
and questionnaires, showed Valimont's letter to District Court Judge Steven R.
Schwab because both requests for accommodation and for excusal are decided by
judges.  (Kimble Aff., Ex. 1, Answer to MDHR Charge at 10-11, VanBuskirk Aff.
¶¶ 1-3, 7.)  Judge Schwab wrote a note on Valimont's letter stating: "Theresa, Not
quite clear to me.  Is he asking to be removed or just telling me his needs?  SRS."
(Am. Compl., Ex. B.)

On December 18, 2015 on the Qualification Questionnaire, Judge Schwab
wrote: "Request to be excused from Grand Jury Service is GRANTED," and
signed his name.  (Qualification Questionnaire; Am. Compl. ¶ 22.)  The court
then mailed a notice to Valimont that his request to be excused from jury service
had been granted.  (Am. Compl. ¶ 24; Macpherson Aff., Ex. 1.)  Once Valimont
received the notice, he contacted the court and stated that he did not want to be

excused from grand jury service.  (Am. Compl. ¶ 24.)  The court did not change

its decision to excuse Valimont.  (Id. ¶ 25.)

The Amended Complaint does not allege that the January 2016 grand jury

was ever convened.  Defendants aver that no grand jury was convened in 2016

and "[n]one of the people who were sent grand jury summonses in Freeborn

County in 2015-16 were called to serve on a grand jury."  (Maiers Decl. ¶ 2.)

## B.    Procedural History

On August 9, 2017, Valimont filed a Complaint in this Court against

Defendants the State of Minnesota, the Minnesota Judicial Branch, Minnesota

Judicial Council, the State Court Administrator's Office, and the Third Judicial

District Court Administrator's Office.  On January 9, 2018, Valimont filed an

Amended Complaint, which was identical to the original Complaint but

included a missing page.

The Amended Complaint alleges: Count 1: Violation of the Americans

with Disabilities Act ("ADA"), 42 U.S.C. § 12132; Count 2: Violations of the

Federal Rehabilitation Act, 29 U.S.C. § 794; and Count 3: Violations of the

Minnesota Human Rights Act ("MHRA"), Minn. Stat. § 363A.12.

## III.    DISCUSSION

### A.    Subject Matter Jurisdiction

4

1.     **Standard for Motion to Dismiss under Rule 12(b)(1)**

"Jurisdictional issues, whether they involve questions of law or of fact, are

for the court to decide." Osborn v. United States, 918 F.2d 724, 729 (8th Cir.

1990).  "In order to properly dismiss for lack of subject matter jurisdiction under

Rule 12(b)(1), the complaint must be successfully challenged on its face or on the

factual truthfulness of its averments." Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir.

1993) (citation omitted).  "In a facial challenge to jurisdiction, all of the factual

allegations concerning jurisdiction are presumed to be true and the motion is

successful if the plaintiff fails to allege an element necessary for subject matter

jurisdiction." Id.  In "a factual attack on the jurisdictional allegations of the

complaint, the court may receive competent evidence such as affidavits,

deposition testimony, and the like in order to determine the factual dispute." Id.

2.     **Sovereign Immunity**

The MHRA claim is barred by Eleventh Amendment sovereign immunity.

"Sovereign immunity is a jurisdictional, threshold matter that is properly

addressed under Rule 12(b)(1)." Keselyak v. Curators of the Univ. of Mo., 200 F.

Supp. 3d 849, 853 (W.D. Mo. 2016) (citation omitted), aff'd, 695 F. App'x 165 (8th

Cir. 2017).

5

> The Eleventh Amendment bars federal court jurisdiction over state
> law claims against unconsenting states or state officials when the
> state is the real, substantial party in interest, regardless of the
> remedy sought.  This constitutional bar applies with equal force to
> pendent state law claims.

Cooper v. St. Cloud State Univ., 226 F.3d 964, 968 (8th Cir. 2000) (citations

omitted).  Eleventh Amendment protections apply to instrumentalities of the

state.  Id.

> The test for determining whether a State has waived its immunity
> from federal court jurisdiction is a stringent one.  A State is deemed
> to have waived its immunity only where stated by the most express
> language or by such overwhelming implication from the text as will
> leave no room for any other reasonable construction.  The interests
> of Federalism require that such a waiver be clear and unequivocal.
> Importantly, [a] State's general waiver of sovereign immunity is
> insufficient to waive Eleventh Amendment immunity; the state must
> specify an intent to subject itself to federal court jurisdiction.

Id. (citations omitted).

In the MHRA, the state of Minnesota "only consented to suit in its own

state courts."  Id.  Thus, "Minnesota is immune from MHRA claims in federal

court."  Phillips v. Minn. State Univ. Mankato, No. CIV. 09-1659 (DSD/FLN),

2009 WL 5103233, at *3 (D. Minn. Dec. 17, 2009) (citations omitted).  A state's

courts are part of the state and, thus, are protected by sovereign immunity.

Harris v. Missouri Court of Appeals, W. Dist., 787 F.2d 427, 429 (8th Cir. 1986)

("[C]ourts as entities . . . are protected by state immunity under the eleventh amendment."). See also Collins v. Dakota County Dist. Court, 435 F. App'x 581 (8th Cir. 2011). Valimont asked Defendants to waive their sovereign immunity, but they declined. (Macpherson Aff., Exs. 10-11.)

"Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998) (citation omitted). Therefore, the Court cannot withhold ruling on the question of sovereign immunity, as requested by Valimont. The MHRA claim is barred from suit in federal court by sovereign immunity and is dismissed without prejudice.

### 3.   Standing

Defendants argue that Valimont lacks standing to pursue injunctive relief. The Amended Complaint seeks the following injunctive relief:

a.   Direct the Defendants to train District Court Judges, Administrators and Staff who have responsibility for implementing procedures for selecting people to serve on Grand Juries in Minnesota concerning:

   i.   Processing Qualification Questionnaires submitted by people with disabilities, including people who are deaf, to ensure that they are not excluded from jury service.

7

      ii.     Processing requests by people with disabilities, including people who are deaf, for auxiliary aids and services and other accommodations.

      iii.    Refraining from assuming that a person has made a request to be excused from Grand Jury service. Requiring an affirmative written statement that the person summoned has requested to be excused.

b.    Directing the Defendants to develop and implement procedures to review and supervise the actions of District Court Judges and Court personnel concerning the selection of people to serve on Grand Juries in Minnesota.

c.    Directing the Defendants to develop a uniform and standardized Qualification Questionnaire for Grand Jury Service to be used by District Courts in Minnesota that explicitly asks respondents whether they request an auxiliary aid or service, or other accommodation to be able to serve on a Grand Jury and to identify the auxiliary aid or service the respondent needs.

d.    Directing the Defendants to notify residents of the State of Minnesota that people who are deaf are eligible to serve on Grand Juries and will be provided with ASL interpreters or other appropriate auxiliary aids requested to serve as jurors on Grand Juries.

(Am. Compl. at 10-11.)

Standing is always a threshold question in determining whether a federal court may hear a case. A party invoking federal jurisdiction has the burden of establishing standing for each type of relief sought. [A]n actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.

8

Missourians for Fiscal Accountability v. Klahr, 830 F.3d 789, 793–94 (8th Cir. 2016) (citations omitted).

> [T]o seek injunctive relief, a plaintiff must show that he is under threat of suffering injury in fact that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury.

Summers v. Earth Island Inst., 555 U.S. 488, 493 (2009).  Thus, standing for injunctive relief requires that a plaintiff show a "real and immediate threat of repeated injury."  O'Shea v. Littleton, 414 U.S. 488, 496 (1974).

Valimont asserts that he continues to be exposed to Defendants' flawed juror screening process because he is a Minnesota resident and thus eligible to be summoned for jury service in the future, and all state district courts use the same flawed Qualification Questionnaire that the Freeborn County District Court used to involuntarily excuse him from grand jury service.

Because Valimont now lives in Mankato, he has no realistic chance of being called for grand jury duty in the Third Judicial District.  (Mankato is in the Fifth Judicial District.)  There is no a "real and immediate threat of repeated injury" caused by Defendant Third Judicial District Court Administrator's Office.

See O'Shea, 414 U.S. at 496.  Thus, as to Defendant Third Judicial District Court

Administrator's Office, Valimont does not have standing to seek injunctive relief.

As to the remaining Defendants (State of Minnesota, Minnesota Judicial

Branch, Minnesota Judicial Council, and State Court Administrator's Office),

there is no real and immediate threat of repeated injury because, even if

Valimont is again called for grand jury duty, the uniform Qualification

Questionnaire has been altered to clearly ask whether the potential juror is

requesting an accommodation in order to be able to serve on a jury.  The thrust of

Valimont's Amended Complaint and argument is that the previous version of

the grand jury Qualification Questionnaire was vague and confusing on this

point, and that Defendants misunderstood his request for accommodation as a

request to be excused.

Defendants provide publicly available policies and procedures

establishing that, when requested, ASL interpretation is provided to jurors.  See

Minnesota Judicial Branch, Jury Service: FAQ: What if I need special

accommodations?, at

http://www.mncourts.gov/jurors.aspx#SpecialAccomodations (last visited Mar.

5, 2018) (addressing accommodations such as "sign language interpreter" and

"hearing amplification" and providing links to the Guide to Ensuring Effective
Communication with Prospective Jurors Who Are Deaf or Hearing Disabled and
the Grand Jury Guide, which has "information about accommodations for jurors
summoned to serve on grand juries").  Valimont, himself, was provided an ASL
interpreter by the Freeborn County District Court on December 10, 2015.
(Kimble Aff., Ex. 2, Register of Actions for Case No. 24-CV-15-1877 (Freeborn
County, Minn.)

According to Valimont, the Freeborn County District Court treated his
submissions to be a request for an excusal from grand jury duty, which he did
not want.  Valimont cannot show that there is real or immediate threat that this
type of miscommunication will reoccur in the future.  Defendants have now
amended the uniform statewide grand jury service Qualification Questionnaire
to include a check box allowing jurors to indicate, "Yes" or "No" whether they
are "requesting an accommodation, which would allow [them] to serve on a
jury."  (Landrum Aff., Ex. C at 1.)  Valimont offers no evidence of a real or
immediate threat of being wronged again by way of a Minnesota court's
interpretation of his request for accommodation as a request for excusal from
grand jury duty or that the alleged wrongful conduct may occur again.  See

Updike v. Multnomah County, 870 F.3d 939, 947 (9th Cir. 2017) (holding that

deaf plaintiff lacked standing to seek injunctive relief because he offered "no

evidence of a real or immediate threat that he would be wronged again by way

of the State's failure to provide an ASL interpreter at future court appearances,"

when the evidence showed that the state had altered its procedures so that

"information about necessary accommodations are now noted in the booking

registers"); Shotz v. Cates, 256 F.3d 1077, 1081 (11th Cir. 2001) ("In ADA cases,

courts have held that a plaintiff lacks standing to seek injunctive relief unless he

alleges facts giving rise to an inference that he will suffer future discrimination

by the defendant.").

Thus, the Court dismisses Valimont's claims for injunctive relief without

prejudice for lack of standing based on a failure to show a likelihood of future

injury.

**B.      Standard for a Motion to Dismiss under Rule 12(b)(6)**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may

move the Court to dismiss a claim if, on the pleadings, a party has failed to state

a claim upon which relief may be granted.  In reviewing a motion to dismiss, the

Court takes all facts alleged in the complaint to be true.  Zutz v. Nelson, 601 F.3d

842, 848 (8th Cir. 2010).

> To survive a motion to dismiss, a complaint must contain sufficient
> factual matter, accepted as true, to state a claim to relief that is
> plausible on its face.  Thus, although a complaint need not include
> detailed factual allegations, a plaintiff's obligation to provide the
> grounds of his entitlement to relief requires more than labels and
> conclusions, and a formulaic recitation of the elements of a cause of
> action will not do.

Id. (citations omitted).

In deciding a motion to dismiss, the Court considers the complaint and "materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings.  For example, courts may consider matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint."  Greenman v. Jessen, 787 F.3d 882, 887 (8th Cir. 2015) (citations omitted).

Valimont objects that Defendants have attempted to convert the motion to dismiss under Rule 12(b)(6) into a summary judgment motion because Defendants have submitted outside materials in the form of the affidavits of Janine Kimble and Kristine Maiers along with attached exhibits.  Exhibit 1 to the Kimble affidavit is Defendants' entire MDHR response.  Simply because Valimont's Amended Complaint included two documents that were also exhibits to the MDHR Answer does not require the Court to consider the entire MDHR

13

Answer and exhibits on this motion to dismiss, particularly when the MDHR

Answer includes affidavits that include information far outside of the allegations

in the Amended Complaint and averments with which Valimont does not agree.

Exhibit 2 is a public court record, which is admissible on a Rule 12(b)(6) motion.

The Court declines to convert the motion to dismiss into a summary judgment

motion when discovery is not complete.

### C.    Whether Valimont Has Alleged Sufficient Facts to State a Claim

#### 1.    Elements of the Claims

Under Title II of the ADA: "no qualified individual with a disability shall,

by reason of such disability, be excluded from participation in or be denied the

benefits of the services, programs, or activities of a public entity, or be subjected

to discrimination by any such entity." 42 U.S.C. § 12132.  The Court will consider

Valimont's claims under the ADA and Rehabilitation Act together because

> [t]he ADA and § 504 of the Rehabilitation Act are similar in
> substance and, with the exception of the Rehabilitation Act's federal
> funding requirement, cases interpreting either are applicable and
> interchangeable for analytical purposes.

Bahl v. County of Ramsey, 695 F.3d 778, 783 (8th Cir. 2012) (citation omitted).

To establish a failure to accommodate, a plaintiff must demonstrate:

1) he is a qualified individual with a disability; 2) he was excluded
from participation in or denied the benefits of a public entity's

services, programs, or activities, or was otherwise discriminated
against by the entity; and 3) that such exclusion, denial of benefits,
or other discrimination, was by reason of his disability.

Layton v. Elder, 143 F.3d 469, 472 (8th Cir. 1998) (citations omitted).

The Eighth Circuit has

construed Title II of the ADA and its implementing regulations as
requiring that qualified persons with disabilities receive effective
communication that results in meaningful access to a public entity's
services.  Depending on the circumstances, this may require the use
of 'auxiliary aids and services,' such as interpreters for the hearing
impaired.

Bahl, 695 F.3d at 784 (citations omitted).

### 2.      Qualified Individual with a Disability

Defendants do not dispute that Valimont is a qualified individual with a

disability.

### 3.      Exclusion from Participation

The parties dispute whether Valimont was excluded from participation in

a public entity's program.

#### a)      Whether Valimont's Requested Accommodation Was Granted

The Court rejects Defendants' claim that, based on the allegations in the

Amended Complaint, Valimont's requested accommodation was granted.  If a

15

person receives the accommodation that he requested, his failure-to-accommodate claim fails.  See Owens v. Armstrong, 171 F. Supp. 3d 316, 332 (D.N.J. 2016).  Here, the Amended Complaint does not establish that Valimont's accommodation was granted.  Based on the Amended Complaint, Valimont requested that he not be excused and that he be provided an ASL interpreter; instead he was excused and no ASL interpreter was provided.  At this stage of the proceedings, Valimont has alleged that his requested accommodation was not provided.

### b)    Whether Valimont Was Excluded

Based on the allegations in the Amended Complaint, Valimont has alleged that he was excluded from a public service, program, or activity.  The parties disagree regarding whether Valimont was excluded, because no grand jury was convened in 2016.  Thus, even if Valimont had not been excused, he never would have served on a grand jury and would never have needed the assistance of an ASL interpreter.  A person is not denied access to a benefit if the benefit does not exist.  See, e.g., Rodriguez v. City of N.Y., 197 F.3d 611, 619 (2d Cir. 1999) ("[T]he ADA does not mandate the provision of new benefits.").

At this stage of the proceedings, Valimont has sufficiently alleged that, although he was not excluded from serving on a grand jury – because no grand jury ever existed on which he could have served – he was excluded from the pool of eligible grand jurors who would have been called to serve if a grand jury was necessary during the term.  Thus, he has alleged that he was excluded from the public service, program, or activity of participation in the grand jury pool.

### D.    Judicial Immunity

Judicial immunity "protect[s] the finality of judgments [and] discourage[es] inappropriate collateral attacks," and it "also protect[s] judicial independence by insulating judges from vexatious actions prosecuted by disgruntled litigants."  Forrester v. White, 484 U.S. 219, 225 (1988) (citation omitted).  Defendants argue that Valimont's Amended Complaint is based on Judge Schwab's decision to interpret Valimont's submissions as a request for excusal and to grant that excusal based on the information presented.  Thus, all claims stemming from Judge Schwab's decision are protected by absolute judicial immunity.

The Court holds that judicial immunity is inapplicable to the named Defendants in this lawsuit.  Valimont does not assert any claims against an individual judge.  In fact, he does not assert a claim against any individual at all.

17

The Eighth Circuit holds that "immunity only extends to claims against
government employees sued in their individual capacities" and "absolute, quasi-
judicial immunity only extends to claims against defendants sued in their
individual—not official—capacities." VanHorn v. Oelschlager, 502 F.3d 775, 778-
79 (8th Cir. 2007). See also Kentucky v. Graham, 473 U.S. 159, 167 (1985) ("The
only immunities that can be claimed in an official-capacity action are forms of
sovereign immunity that the entity, qua entity, may possess, such as the Eleventh
Amendment."); Hernandez v. Sheahan, 455 F.3d 772, 776 (7th Cir. 2006) ("Official
immunities (judicial, legislative, absolute, qualified, quasi, and so on) are
personal defenses designed to protect the finances of public officials whose
salaries do not compensate them for the risks of liability under vague and hard-
to-foresee constitutional doctrines. That justification does not apply to suits
against units of state or local government, which can tap the public fisc.")
(citation omitted); Alkire v. Irving, 330 F.3d 802, 811 (6th Cir. 2003) (holding that
a lawsuit against a state court judge in her official capacity was actually a lawsuit
against the county court and, thus, judicial immunity could not be invoked),
cited with approval in VanHorn, 502 F.3d at 779. Because no Defendant is sued
in an individual capacity, judicial immunity is inapplicable.

18

Accordingly, based upon the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED**:

Defendants' Motion to Dismiss [Docket No. 12] is **GRANTED IN PART** and **DENIED IN PART** as follows:

    1.    Count 1: Violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132 **REMAINS**, with the exception that the request for injunctive relief is **DISMISSED WITHOUT PREJUDICE**;

    2.    Count 2: Violations of the Federal Rehabilitation Act, 29 U.S.C. § 794 **REMAINS**, with the exception that the request for injunctive relief is **DISMISSED WITHOUT PREJUDICE**; and

    3.    Count 3: Violations of the Minnesota Human Rights Act ("MHRA"), Minn. Stat. § 363A.12 is **DISMISSED WITHOUT PREJUDICE** based on sovereign immunity.


Dated:  March 6, 2018                 s/Michael J. Davis
                                        Michael J. Davis
                                        United States District Court